(C. D. 994)

CITIES SERVICE OIL CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 28, 1946)

*Strauss & Hedges (Joseph Schwartz* and *Eugene F. Blauvelt* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General *(Joseph E. Weil,* special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: This protest is directed against the imposition of tax under the provisions of section 3422 of the Internal Revenue Code (26 U. S. C.) at the rate of one-half of 1 cent per gallon on an importation of a substance described on the invoice as "tar." It is claimed that the rate of tax imposed should have been one-quarter of 1 cent per gallon under the provisions of the trade agreement with the United Mexican States published in T. D. 50797, which reduced the rate of tax imposed by the said section 3422 on, among other things, fuel oil.

The provisions under which the tax was imposed and under which claim is made read as follows:

SEC. 3422. Petroleum and derivatives

Crude petroleum, ½ cent per gallon; fuel oil derived from petroleum, gas oil derived from petroleum, and all liquid derivatives of crude petroleum, except lubricating oil and gasoline or other motor fuel, ½ cent per gallon; gasoline or other motor fuel, 2½ cents per gallon; lubricating oil, 4 cents per gallon; paraffin and other petroleum wax products, 1 cent per pound. The tax on the articles described in this section shall apply only with respect to the importation of such articles.

| Internal Revenue Code section | Description of article | Rate of import tax |
|---|---|---|
| 3422 | Crude petroleum, topped crude petroleum, and fuel oil derived from petroleum including fuel oil known as gas oil | ¼¢ per gal. |

There is no dispute about the facts. It appears that the substance at bar is a liquid derivative of crude petroleum produced by distillation and "cracking"; that it was imported for the purpose of using it for the manufacture of asphalt, but was found to be unsuitable for that purpose, and that it was used by the importer, a petroleum refiner, as fuel oil. It further appears that the oil does not meet the specifications for fuel oil of the ordinary grades sold commercially because of a higher viscosity rating than the oils ordinarily sold as fuel oil, but that as a practical matter it and oils of an even higher viscosity rating can be, and frequently are, used as fuel by preheating them before burning, which in effect brings down the viscosity to a usable point.

It is the plaintiff's contention that the oil at bar falls within the common meaning of the term "fuel oil" as used in the Internal Revenue Code section and the trade agreement quoted above. In support of this contention the following definition of the term "fuel oil" is quoted from Webster's New International Dictionary, 2d edition (1937):

**fuel oil.** *Petroleum.* Any oil used for fuel. It usually has a flash point higher than that of kerosene.

Essentially, the defendant's position is not opposed to this view, but it is maintained that the term "fuel oil" as used in the statute and agreement is an *eo nomine* designation by use, and that under the well-established rule such designation covers only that oil which is of a class or kind chiefly used for fuel.

We are in accord with the statement of the law as expressed by counsel for the defendant, but we are of the opinion that the record evidence shows that the so-called "tar" in issue was actually oil of a class or kind which is chiefly used for fuel.

The chief chemist of the plaintiff corporation, a man whose education and experience were shown to amply qualify him as an expert on the subject of fuel oils, gave the following testimony which is in no way controverted:

By Mr. SCHWARTZ:

Q. Now, Mr. Matte, will you give us your opinion as a chemist as to whether this imported material, in its condition as imported and without further processing, was suitable for any other use than as a fuel oil?—A. No.

Q. It was not, in your opinion?—A. Not as such. At one time experiments were run on these types of materials for use as asbestos paper saturants but the experiments were never carried out because they weren't satisfactory, chiefly because the flash is too low.

Q. Then, in your opinion as a chemist, and based upon your experience in your business, what was the only practical use for merchandise of this type? * * * A. As a fuel oil. (R. pp. 26–27.)

If there was only one practical use for merchandise of the type of that at bar, it seems obvious that that must have been its chief use.

During the course of the trial numerous references were made to certain specifications for standard grades of fuel oil established by the United States Bureau of Mines, the American Society for Testing Materials, and the Department of Commerce, and there is no doubt that the merchandise at bar does not come within the requirements for such standard grades of fuel oil for the reason that its viscosity rating is too high.

We do not think it follows, however, that merchandise such as that at bar is excluded from the scope of the term "fuel oil" either as commonly or commercially understood in this country. The common meaning of the term as given in the definition cited in plaintiff's brief, hereinbefore quoted, and as given by other lexicographers, refers to oil used as fuel, that is to say, it makes use the test. There is nothing in the record to show that the commercial meaning differs from the common meaning, and we find nothing to indicate that the term "fuel oil" as generally, definitely, and uniformly understood in the trade and commerce of this country excluded oil which exceeded the highest viscosity rating of the standard grades of fuel oil. Indeed, plaintiff's witness testified that numerous large consumers of fuel oil, such as railroads, ships, and refiners, use as fuel oils which exceed in viscosity the highest rating of the standard grades of fuel oil.

It is our view that the specifications cited during the course of the trial can only be considered as designating the outside limits of the standard grades of fuel oil, but not as limiting the scope of the term.

Judgment will therefore issue sustaining the claim made in the protest.